The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the addition of temporary total disability compensation and medical expenses awarded plaintiff due to psychological conditions causally related to the injury by accident. Furthermore, the undersigned order an independent medical evaluation for plaintiff with a neuropsychiatrist.
* * * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Industrial Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with Consolidated Risk Management as the servicing agent.
3. The employment relationship existed between the parties on July 3, 1992.
4. Plaintiff's average weekly wage was $232.00 which yields a weekly compensation rate of $154.67.
5. Plaintiff sustained an admittedly compensable injury on July 3, 1992, as a result of which the parties entered into a Form 21 Agreement for Compensation. Plaintiff received temporary total disability from July 3, 1992 through May 16, 1993.
6. The issues for determination are:
 a. Is plaintiff entitled to continuing total disability benefits beyond May 17, 1993?
 b. What amount, if any, is plaintiff entitled to for permanent partial disability?
 c. Has plaintiff unjustifiably refused to accept suitable employment? and,
 d. Is the defendant entitled to an independent medical evaluation of plaintiff by a psychiatrist of its choosing?
* * * * * * * * * * * *
RULING ON EVIDENTIARY MATTERS
Plaintiff's objection to the videotaped surveillance and testimony of James E. Carr is hereby SUSTAINED.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a forty-eight year old married female who was employed as a veneer grader for twelve years. Plaintiff's duties included bending and lifting to sort and stack wood.
2. On July 3, 1992, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer when she fell a distance of seven feet from a ladder, landing face first on the concrete floor. As a result of the fall, plaintiff sustained injuries to her chest, right wrist, forehead, neck, left leg, and left foot.
3. Following the fall, plaintiff was transported by the rescue squad to the emergency room at Carteret General Hospital. Plaintiff was instructed to follow-up with Dr. Kerry Willis of East Carteret Family Medicine.
4. From July 8, 1992 through July 10, 1995, plaintiff treated with Dr. Willis for neck strain and soft tissue injuries. Despite physical therapy, plaintiff's complaints of pain, headache, sleep problems, and muscle spasms did not improve. Dr. Willis diagnosed plaintiff as having depression, for which medications were prescribed.
5. In September of 1992, Dr. Willis ordered an MRI after plaintiff's condition failed to improve. The MRI showed a medium to large herniation at C5-6, causing compression of the thecal sac against the spinal cord.
6. There is insufficient evidence of record from which to prove by its greater weight that plaintiff's cervical disc herniation was causally related to the work-related injury.
7. Dr. Willis referred plaintiff to Dr. Ira Hardy for a neurosurgical consultation. A cervical myelogram and post-contrast CT scan revealed no evidence of nerve root or spinal cord compression; therefore, Dr. Hardy released plaintiff to return to Dr. Willis on February 9, 1993.
8. On May 12, 1993, Dr. Willis continued plaintiff's prescriptions, including those for depression and sleep disturbances. On May 17, 1993, plaintiff was released to light duty work in the stock room by Dr. Willis. After approximately three and a half hours of work, plaintiff had to be taken home due to complaints of pain. The duties required plaintiff to sit in a chair and answer the telephone.
9. On May 25, 1993, Dr. Willis saw plaintiff and stated that in large measure, anxiety and depression were playing a large part in plaintiff's condition. Although Dr. Willis felt that plaintiff would not improve further, he did not excuse plaintiff from work at that time.
10. On August 29, 1993, plaintiff was admitted to the hospital after fainting. Dr. Willis noted at that time that plaintiff had chronic pain from a shoulder/back injury suffered at work.
11. On October 27, 1993, Dr. Willis found plaintiff to be at maximum medical improvement, and rated her as retaining a ten percent permanent functional impairment to the back.
12. On March 14, 1994, Dr. Willis diagnosed plaintiff as having fibromyalgia, unexplained soft tissue pain characterized by multiple trigger points.
13. In late 1993 Dr. Willis referred plaintiff to the Neuse Center for Mental Health, where she first saw Dr. Harris Evans, a psychiatrist. Dr. Evans prescribed treatment with a psychologist at the Neuse Center. This treatment by Dr. Ann Rivers began January 24, 1994. Dr. Rivers found plaintiff disabled and unable to work at that time.
14. Dr. Rivers last saw Plaintiff on June 1, 1995 and plaintiff was still depressed, disabled, and unable to work at that time.
15. Upon referral by the carrier, plaintiff was seen and evaluated by psychiatrist Dr. Robert Rollins, who found plaintiff's stress, anxiety and sleep disturbance created a vicious circle with the fibromyalgia, which in turn, increased the pain. Dr. Rollins found plaintiff to be disabled with chronic pain and depression when he evaluated her on January 16, 1995.
16. Plaintiff's psychological problems and resulting disability beginning January 24, 1994 are causally related to the admittedly compensable injury by accident suffered on July 3, 1992.
17. As the result of the compensable injury and resulting psychological problems, plaintiff has been unable to work since January 24, 1994.
* * * * * * * * * * * *
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The approval by the Commission of a Form 21 Agreement establishes the employee's disability and that disability continues until the employer shows that the employee is no longer disabled. Stone v.G G Builders, 121 N.C. App. 671, 468 S.E.2d 510 (1996). Once the employee establishes his disability (reduction in earning capacity), the employer has the burden of showing that "suitable jobs are available" and that (she) is capable of getting one of those jobs.Tyndall v. Walter Kidde Co., 102 N.C. App. 726, 403 S.E.2d 548,disc. rev. denied, 329 N.C. 505, 407 S.E.2d 553 (1991).
2. Plaintiff is entitled to have defendants pay all medical and psychoanalytical treatment expenses incurred by plaintiff as a result of this injury by accident. N.C.G.S. 97-25.
3. Plaintiff is entitled to temporary total disability compensation benefits in the amount of $154.67 per week for the time period beginning January 24, 1994 and continuing thereafter for as long as she remains so disabled. N.C.G.S. 97-29.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation benefits in the amount of $154.67 per week for the time period beginning January 24, 1994 and continuing thereafter for as long as she remains so disabled. Amounts that have accrued shall be paid plaintiff in a lump sum.
2. Defendant shall pay all medical and psychoanalytical treatment expenses incurred by plaintiff as a result of this injury by accident.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded herein shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel. To the extent that this award has accrued, twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs of this appeal.
ORDER
Plaintiff shall undergo an independent medical evaluation with Dr. C. Thomas Gualtieri, a neuropsychiatrist at UNC Medical Center, Chapel Hill, North Carolina. The cost of this independent evaluation shall be paid by defendant.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________ COY M. VANCE COMMISSIONER